**NISSEI AMERICA, INC., et al., Plaintiffs,**

v.

**CINCINNATI MILACRON, INC., et al., Defendants.**

**No. 79 C 4945.**

United States District Court, N.D. Illinois, E.D.

May 24, 1982.

Carl E. Moore, Edward M. O'Toole, Merriam, Marshall & Bicknell, Chicago, Ill., Carl Kustin, William G. Anderson, Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., for plaintiffs.

Robert L. Harmon, John L. Cline, Hume, Clement, Brinks, Willian & Olds, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On April 23, 1982, Magistrate Balog ordered that plaintiffs produce within 21 days all matters that this Court initially ordered be be produced on August 14, 1981, in the context of defendants' earlier motion to compel discovery pursuant to Fed.R.Civ.P. 37(a).[1] In the course of his lengthy and thorough memorandum opinion detailing the history of this litigation and the plaintiffs' alleged continuous obstruction of discovery, Magistrate Balog also stated that if plaintiffs failed to produce the required material within the time specified, he would recommend to this Court that this case be dismissed with prejudice as the ultimate sanction available under Rule 37(b). Plaintiffs filed their timely objections to the Magistrate's order pursuant to 28 U.S.C. § 636 and defendants have responded thereto. After careful consideration of the memoranda filed before the Magistrate and this Court, the relevant pleadings and exhibits, the discovery requests and the responses thereto, and the Magistrate's opinion and order, the Court hereby adopts the Magistrate's opinion and order subject to the additions and modifications set forth below.

Although this case was filed approximately two and one-half years ago, the

---

1. On July 16, 1981, Magistrate Cooley ordered that plaintiffs answer certain interrogatories and produce a variety of materials that had been withheld from defendants. Plaintiffs filed objections to the Magistrate's order pursuant to 28 U.S.C. § 636(b)(1). This Court adopted the Magistrate's order in full on August 14, 1981.

parties and their counsel are still mired in the same discovery disputes that have plagued this case since its inception. The instant dispute centers on plaintiffs' continued refusal to provide defendants with material that falls into essentially six categories: (1) certain written communications between plaintiffs and their Japanese customers; (2) the numbers of all the United States patent applications prepared by plaintiffs' Japanese patent attorneys for Japanese clients other than plaintiffs during a specified time period and the identity of the American attorneys utilized by the Japanese in connection with those applications; (3) certain records of the I.P. Container Corporation that were produced to plaintiffs during an unrelated investigation by the International Trade Commission ("ITC") and which are subject to a protective order against disclosure issued by the ITC; (4) certain sketchbooks created by the inventor of the machines whose patents are at issue in this suit; (5) certain record books pertaining to those machines; and (6) some reduction to practice drawings relating to those machines.

The Court is in complete agreement with the Magistrate to the extent that he stated that unless plaintiffs produce the written communications between plaintiffs and their Japanese customers, the sketchbooks, the machine record books, and the reduction to practice drawings in their possession, this matter should be dismissed with prejudice pursuant to Rule 37(b)(2)(C). Plaintiffs have cited no solid support for their invocation of a broad manufacturer-customer privilege based upon Article 281(3) of the Japanese Code of Civil Procedure[2] that would shield all their communications with Japanese customers from discovery and our own research has failed to uncover such a privilege. Moreover, plaintiffs' reliance upon certain language, taken out of context from our September 18, 1981, opinion denying section 1292(b) certification of the August 14, 1981, order for purposes of appeal,

in support of its argument that this Court has implicitly recognized such a privilege is absurd. In the first instance, the Court's reference to "privilege" in the September 18, 1981, opinion dealt solely with the attorney-client privilege, not the asserted manufacturer-customer privilege. Secondly, the Court at that time rejected any claim that the material plaintiffs had been ordered to produce was subject to the attorney-client privilege. It did not acknowledge or recognize that plaintiffs' claim of privilege, of any kind, had any merit. *See Nissei America, Inc. v. Cincinnati Milacron, Inc.*, No. 79 C 4945 Mem op. at 2 (N.D.Ill. Sept. 18, 1981).

Furthermore, plaintiffs' latest objection to the relevance of the sketchbooks that they were ordered to produce comes much too late in the discovery process to excuse their failure to produce the books at this time. The relevance objection was interposed only *after* plaintiffs were ordered to produce the books by a United States Magistrate and a District Court Judge, *after* they expressly promised defendants that the books would be produced, and *after* defendants filed their motion seeking dismissal for discovery abuses under Rule 37(b). Plaintiffs apparently have now agreed to produce the sketchbooks still another time. *See* Plaintiffs' Objections to Magistrate Balog's Memorandum Order dated April 23, 1980, at 7. We trust that plaintiffs will honor this most recent commitment, for they will not have another opportunity. To the extent that plaintiffs have, finally, turned over to defendants all the machine record books and reduction to practice drawings in their possession, that is all that this Court's order of August 14, 1981, requires. However, plaintiffs shall make every effort to assure that they have indeed searched everywhere for the missing record book(s) for one of the machines and

**2.** Article 281 provides in pertinent part:
A witness may refuse to testify in the following cases:
＊　　＊　　＊　　＊　　＊　　＊

(3) in case he is questioned with respect to matters relating to a technical or professional secret.

the drawings that they now say they cannot find.[3]

The numbers of the United States patent applications prepared by plaintiffs' Japanese patent attorneys and the identity of their American counterparts consulted in connection with those applications stand on a somewhat different footing. Although the Court previously rejected plaintiffs' claim of privilege in that information, as did Magistrate Cooley,[4] we have never expressly ruled on plaintiffs' claim that they should not be required to produce that information because it is in the possession of Akimoto & Company, a Japanese patent firm, over whom plaintiffs have no control or authority to require such disclosure.[5] In the interest of fully airing the parties' discovery disputes before the ultimate sanction of dismissal under Rule 37(b) is considered, and because we believe that our earlier opinions in this area did not fully consider the particular subject, we have reconsidered the question of whether the information regarding the patent applications prepared by plaintiffs' Japanese patent attorneys sought in Interrogatories 12(b), (c), (d), (f), (h) and 14(h) must be furnished by plaintiffs.

■ Plaintiffs' objections based upon the asserted attorney-client privilege in the information sought fail upon two grounds. Plaintiffs lack standing to raise the attorney-client privilege between Akimoto & Co. and unrelated third-party clients. Even if plaintiffs were in a position to invoke the attorney-client privilege between Akimoto & Company and its other Japanese clients, the privilege is clearly inapplicable to the information sought by defendants, as we have stated on previous occasions. Defendants do not seek to discover the substance of any communications between the Japanese patent attorneys and their clients. Rather, they merely seek to discover the numbers assigned to the patent applications by the patent office and the names of the attorneys who assisted in processing those applications in the United States. *Compare Mendenhall v. Barber-Greene Company,* 531 F.Supp. 951 (N.D.Ill.1981).[6]

---

3. We recognize that Katashi Aoki stated during his deposition on December 22 and 23, 1981, that he would, and implicitly could, produce *all* the drawings for the ASB150 machine and a record book for each model of the ASB machines. However, upon his return to Japan, Aoki discovered that there was no record book for the ASB650 model and that some of the reduction to practice drawings had been lost or misplaced. *See* Affidavit of Katashi Aoki filed as Exhibit B to Plaintiffs' Memorandum in Opposition to Defendants' Supplemental Memorandum in Support of Dismissal. There has been no suggestion made that Aoki's statements are untrue or that the material that has not been produced is actually in existence and in plaintiffs' possession. Although Aoki admittedly promised to produce all the material requested at his deposition, we cannot justify dismissal of this action for the failure to produce material that nobody disputes is not now in plaintiffs' possession, despite the unjustified delay in finally ascertaining that fact. We note that there has been no allegation that the delay somehow contributed to plaintiffs' inability to produce the material at this juncture. Moreover, we note that plaintiffs promised to comply with this aspect of defendants' discovery request and took steps directed at such compliance before defendants filed their motion to dismiss under Rule 37(b).

4. *See Nissei America, Inc. v. Cincinnati Milacron, Inc.,* No. 79 C 4945 (N.D.Ill. Aug. 14, 1981), adopting the Magistrate's order in full, and *Nissei America, Inc. v. Cincinnati Milacron, Inc.,* No. 79 C 4945 (N.D.Ill. Sept. 18, 1981), noting that plaintiffs could claim no privilege in the material to be produced to defendants in accordance with our earlier ruling.

5. The lack of control argument was first raised by plaintiffs in their objections to Magistrate Cooley's order of July 16, 1981. Since we adopted the Magistrate's order in full on August 14, 1981, without discussion of plaintiffs' lack of control argument, our opinion could be taken as a *sub silentio* rejection of plaintiffs' argument. This was apparently Magistrate Balog's view of our opinion, and it is not unjustified. However, in view of the severity of the sanction to be applied under Rule 37, a fresh look at the question is warranted.

6. *Mendenhall* involved a party's attempt to discover the substance of certain letters that passed between a party's attorney and certain foreign patent agents and a patent attorney. In their most recent supplemental brief filed on this issue, plaintiffs blatantly take language out of context from *Mendenhall* in a futile attempt to reargue their privilege claim. Indeed, plain-

Plaintiffs have stated, however, that the information sought is in the possession and control of their Japanese patent attorneys, Akimoto & Company, and that Akimoto has refused to produce the information, asserting the attorney-client privilege between itself and its Japanese clients other than plaintiffs.[7] Whether or not Akimoto is correct in relying upon the attorney-client privilege in its refusal to give plaintiffs access to the information sought by defendants' interrogatories, it is clear that a party can decline to answer interrogatories that seek information that is unavailable to it and beyond its control. *Skelton & Co. v. Goldsmith,* 49 F.R.D. 128, 129 (S.D.N.Y. 1969); *Pilling v. General Motors Corporation,* 45 F.R.D. 366, 369 (D. Utah 1968); 4 J. Moore, *Federal Practice* ¶ 33.26 at 33–150—33–153 (Supp.1981); Fed.R.Civ.P. 33(a). Although a party generally cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of its attorney, *Hickman v. Taylor,* 329 U.S. 495, 504, 67 S.Ct. 385, 390, 91 L.Ed. 451 (1947), we have not found a case in which a party has been required to compel its attorney to answer interrogatories about the affairs of other clients represented by that attorney. Accordingly, we conclude that plaintiffs need not furnish the information sought by interrogatories 12(b), (c), (d), (f), (h) and 14(h) since it is in the possession and control of Akimoto & Company, a non-party to this action not under plaintiffs' control, and it is thus not available to plaintiffs within the meaning of Rule 33(a).

The final category of material not produced to defendants is comprised of the records of the I.P. Container Corporation that were originally produced to plaintiffs subject to a protective order issued by the International Trade Commission. The Court never ordered that the I.P. Container material be produced because the parties entered into a stipulation providing that plaintiffs would petition the ITC for permission to disclose the I.P. Container material. *See Nissei America, Inc. v. Cincinnati Milacron, Inc.,* No. 79 C 4945 mem. op. at 1 n. 1 (N.D.Ill. Sept. 18, 1981). However, the ITC denied plaintiffs' petition on January 20, 1982, and the material still has not been produced. Accordingly, we now hold that plaintiffs need not produce the I.P. Container material that is subject to the protective order since it is not available to plaintiffs or within their possession, custody or control within the contemplation of Rule 33(a) or Rule 34(a) of the Federal Rules.

Accordingly, the Magistrate's order of April 23, 1982, is adopted as modified herein.[8] Plaintiffs shall produce the required materials in accordance with this opinion on or before June 3, 1982, or this action will be dismissed with prejudice for failure to comply with discovery orders pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure.

On June 4, 1982, Magistrate Balog shall certify to the Court whether plaintiff has complied with this order. The Court also adopts the Magistrate's finding that defendants are entitled to reimbursement for the reasonable expenses, including attorneys' fees, incurred in compelling compliance with the August 14, 1981, order. Plaintiffs shall pay defendants the sum of $28,695.98 in accordance with Magistrate Balog's order of May 10, 1982. It is so ordered.

tiffs miscite certain language as the holding of the case when Judge Shadur, the author of *Mendenhall,* goes on in the following sentence to label the cited language as "need[ing] some leavening in functional terms." 531 F.Supp. at 953.

**7.** *See* Plaintiffs' Reply to Defendants' Motion to Dismiss at 10.

**8.** Our modifications are intended in no way as an indication of disapproval of Magistrate Balog's opinion and order in this matter. The Magistrate's approach was perfectly justified on the record before him. However, our reconsideration of our earlier orders in this matter necessitated the modifications set forth above. In the Court's view, the Magistrate has done an *excellent job of supervising discovery in this matter,* and whenever possible, his recommendations will be followed by this Court.